Our second case for this morning is National Police Association v. The Gannett Company. We'll let the courtroom clear out for a second before we start. Okay, I think things have calmed down a little bit. So, Mr. Bopp, you may begin. Thank you very much, Your Honor, and may it please the Court. In the normal situation, a cause of action for defamation accrues upon publication. Now, there are exceptions to that, such as republication. And so the question of when does a publication occur and who does it encompass is an important question in the law of defamation. But it can also arise under Section 5772, which is the cause of action brought by the National Police Association. This is where a cause of action accrues after publication when the defamer finds out that the defamatory statement is false, as is alleged here. So, Mr. Bopp, has the Indiana Supreme Court ever recognized that scope for 5772 of the Second Restatement of Torts? I'm sorry, I had difficulty hearing you, ma'am. I apologize. Has the Supreme Court of Indiana ever found a claim under 5772 of the Second Restatement of Torts of the sort that you are arguing for? No. Okay, thank you. No. And, however, this Court and the… And let me ask you, has any court in the country, you know, adopted this continuing publication reading of 5772 that you are proposing? There are two cases that we cite in our brief in which they appear to have done so. But it is true that there is not a case on point that we can cite to, nor is there a case on point that says there is no such action or that we repudiate 5772. In the Trackett case, in the decision of this Court, the Seventh Circuit recognized that Indiana would recognize the cause of action under Section 5772. But in a much more limited way than you're arguing for. Well, that's true. I mean, a significantly different way, in fact. It's positively different. Well, let me be clear about that. There is nothing in the Trackett decision that excludes our cause of action. But, Mr. Bopp, as you well know, we are here under the diversity jurisdiction. And the number of times this Court has said that's not the time for a federal court to get creative is legion. And I would think if this is what you want, you should go either to a state legislature or you should find an in-state defendant and sue in state court so that removal is impossible. And see what the state court says. I see not a hint from the Indiana Supreme Court that they are ready to take the step you're suggesting. Well, both in Trackett and in the Packett and Perkins cases, this Court did decide whether Illinois and Indiana would recognize certain doctrines under defamation, such as the single publication rule, and in Trackett, whether or not a cause of action for 5772 would be recognized by Indiana courts. Now, if you are not inclined to do that, we have moved for certification of the questions. But certification is appropriate only when we are in some doubt about what a state court would do. So, for example, and you know all of this perfectly well, if the intermediate appellate courts of Indiana had been pushing in this direction, if there was precedent from the Indiana Supreme Court saying, you know, this isn't the case, but we're open to the next case, there are signals that one gets that causes one to think, well, maybe the state Supreme Court will do this. But what I see from Indiana is just a very standard rule of law that follows the single publication rule that would by itself, I think, bar the claims that you're trying to bring on behalf of your clients. Maybe that's bad public policy, maybe it's good public policy, but it seems to be what Indiana does. And you didn't discuss the Pippin case at all, which I realize is an Illinois law decision. We did it in the reply, cite both. They're very close to this case and not favorable to you. Well, but this is the critical difference, is that when does the cause of action accrue? And in Pippin, the argument was that because he notified the publisher after the publication that he had not gone into bankruptcy, that that affected a claim about the original publication and whether or not there was a defamation in the original publication. I agree that the Indy Star, when they originally published this article, that they did so on a reasonable basis. There was no required mens rea that they knew that the information was false. So having said that, then wouldn't it be essential, if we were to accept your theory, to create an exception to the single publication rule? We've all agreed now, the original publication met the relevant legal standards for care, for whatever, it was okay. So we would need some theory that would allow us to say, well, but we're not going to follow the single publication rule here. The single publication rule is applicable to a 5772, because the question there would be, as it is with the original publication, the question is, how many causes of action have accrued? Is it one? For instance, if the statement is made in one edition of a book, one cause of action accrues. Here, when the cause of action accrues because the defamer has knowledge that he's made false statements and wants to continue to do so, there's a duty to remove that defamatory material. But you're not just asking for a duty to remove. You've said, well, or at least you should look at Professor Volokh's article, it could be a duty to remove, it could be a duty to put an explanatory paragraph at the header, there are all sorts of things, and as I understand it, Yes, to mitigate the defamatory effect. You think this claim accrues when the allegedly defamed party goes to the publisher, the person in the defamation sentence, the person who published, whether it's the reporter or the newspaper, and says, you made a mistake. We aren't a scam, or you made a mistake. I'm not bankrupt, or you made a mistake. I'm the wrong person. It was a teacher at a different school. It was one of the hypotheticals that Professor Volokh uses. So somehow that seems to trigger, and that could go on forever into the future with things on the internet as they are. Well, not more than once. Oh, sure it could, because there could be a new mistake. Or it could be further investigations, right? There are a lot of rules about this. If you're suing somebody for publishing a communication, you've got to bring all your claims. You can't put text some away. If you have defamation claims about this communication, you better make them. But you might not know about one of them. And one time. So say an article has five statements of fact. And in year one, the alleger, the claimant says, oh, you know what? I investigated this one fact, and that is completely incorrect. And then year two, they said, you know what? That second fact is incorrect too. Year three, the person says, oh, well, you know what? I looked into this, and that fact also is incorrect. So would that claimant have three separate claims? No, no, because there are rules about bringing claims against a particular party regarding a particular situation. So can that person then wait until, say, instead of sending that notice on years one and two, just wait until year three to say, you know, now I think I'm just going to let them know everything I found? The rules require, as I understand them, for you to bring all your claims against this defendant regarding the particular circumstances under which the case arises. Is there any time limit that you would impose or any sort of limitation on when such a claim can be brought? I don't ‑‑ there's no recommendation for that. Well, I guess I'm wondering what your thoughts are and what sort of limiting principle you think a court would apply if the court adopted a continuing publication theory. Continued. Continued publication, yes. As Judge Wood said, the legislature, of course, can regulate this and impose reasonable limitations and restrictions on this. But that's not a reason to just disregard it and not recognize it as a legitimate claim. Now, this is a very limited claim. In other words, you have to ‑‑ it only creates a duty to remove or correct or modify. It doesn't require you to retract. It must be regarding communications that are under your control. So, you know, it's on their website. But it's not if it's on somebody else's website. They have nothing to do but with that. Before you go any further, could you please explain to me the difference that you are urging between retraction and removal? Well, retraction requires a statement by the IndyStar in this case. You know, where they say, you know, we were mistaken or now we know we're mistaken. And this is just to stop the defamation from continuing. Okay. Just stop it. So you just delete the sentence and it goes off just like the European right to be forgotten? Well ‑‑ That's actually what you're arguing for, I think, is a U.S. adoption of what the EU has struggled with for years. It won't be forgotten. It won't be forgotten. If the IndyStar article is deleted, there are plenty of other articles that cite to the IndyStar article. And let me tell you, think about this. If you Google National Police Association, is the National Police Association legitimate? The very first hit is this article, the 2019 article, that they know now is false and defamatory. And they don't want to do anything about it. They want to forever defame this organization regarding a false, what they know to be now, a false statement. And all we want them to do is stop doing that. So it's not enough for you simply to write an article and put out on whatever kind of podcast or whatever things you have saying that you are a completely legitimate organization concerned with the welfare of police departments, raising money for that purpose, et cetera. I mean, how long do these known defamations have to continue? Well, on the Internet, there are all sorts of things. I mean, I can see like a flood of lawsuits against Fox News, for example, or anybody who takes positions on matters of controversy in today's world. Well, I'm not changing all the rules of defamation, what we're talking about here. Yes, you are, I think. No, I'm not. The only issue that is different is when does the cause of action arise? In the normal case, it arises upon publication. And under subsection 2, it arises when the defamer knows that they are publishing a false and defamatory statement. Mr. Bob. All they have to do is stop. Mr. Bob, do you acknowledge you might have a dispute here with Gannett, because you view their responses as retractions. They don't view their responses as retractions. I think that's a big stumbling block here. Yeah, they don't have a duty to retract, and 5772 does not impose a duty to retract. It just says it right there, remove defamatory material. But it's been understood as adoption of somebody else's defamatory statement, not your own, because one's own defamatory statement is covered by one. Well, but why wouldn't it be covered by two? Because it's redundant. We don't expect that sort of thing. Well, there's nothing in the wording of two that says anything about the originator of it. I'm just saying reading it as a whole and looking at the comments and so on. I just want to alert you, Mr. Bob, you're running out of time if you want to save something for rebuttal. I do. Thank you. Certainly. Mr. Eaton. Good morning, Your Honors. Tim Eaton on behalf of the defendants and police. Your Honor, I'm going to go right to Section 577 first because there's been several questions about it, and I would like to clarify and make certain our position is known. Judge Wood, your question is right on point. Why would you have number two when number one talks about what constitutes publication when the person who made the publication is identified? Number two deals with adopting someone else's defamation. For example, in number two, the literal language says, one who intentionally and unreasonably fails to remove defamatory matter that he knows to be exhibited. Well, if he put the defamatory material on the website, he obviously knew. Why would there be a requirement of knowledge if that's the person who's doing the defamation? But you do agree, do you not, Mr. Eaton, that it doesn't say in so many words in number two that this is about failing to remove allegedly defamatory material that somebody else has uttered? It does not, but I believe it's clarified in Comment P and also in the illustration that's given, Your Honor. And in the district court, counsel said our position is based upon 577-2 and Tackett. And if you look at the Comment P, which does deal with 577-2, it is talking about they draw an analogy to Section 362, Parent C, the duty to use reasonable care to remedy a condition upon the defendant's land created by another. And the illustration that they give, which deals with the men's washroom and some scandalous statement about someone else, they said that it can be adopted if they become aware of it and they don't take it down once they know it's defamatory, but it's someone else's statement. Tackett itself said exactly that situation. The individual, there were two signs put up in the company where he worked. One was a small sign that had been up there for three days, and this court said, well, that's not enough time that's given notice. How could they determine to take it down? One had been up seven or eight months, and they said, well, that's kind of a, there's not enough information here to know whether that was reasonable to take it down because there's a reasonable requirement. But they also said in the context of adopting a publication that they believe the Indiana Supreme Court would adopt 577-2 as it relates to someone else's defamatory information. So that's to rely upon 577-2 and its comment and its illustration and Tackett for this new continued publication rule simply makes no sense. And we also believe the reason why no other case is out there with the exception of the district court case that he cited in South Carolina, in that case the district court judge said that he didn't believe that South Carolina would adopt a single publication rule. In all those states where there is the single publication rule, 577-2 has not reared its head in any type of continued publication rule. And I think the reason is, as this court noted in Pippin, that they thought the Internet should be included in the single publication rule, and that's what we're talking about here, things that remain online, because if it wasn't, it would eviscerate the statute of limitations and expose online publishers to potentially limit this liability. And Judge Lee, that's exactly the point you were asking about. If, for example, there had been an initial lawsuit regarding the first publication and we were successful because they were unable to prove actual malice, which would be required in this instance, and then three or four years later there's someone that maybe recants their testimony or a new fact becomes evident and they put us on notice, we then have to investigate again what happened, and then we would be exposed if we didn't correct or remove to another lawsuit. That could happen again three or four years down the road. It could be endless liability. So, Mr. Eaton, though, you have this parade of horribles. Mr. Bob pushes back and says, No, there would be some way of saying that you have one and only one opportunity to show that the previously acceptable statement has become defamatory because of now, let's say, whether it's NPA's proof that they're a legit organization or whether it's whatever the hypothetical you want. Is the problem that this is just a lot of detail for a state supreme court to adopt? I mean, sort of confining this to one and only one opportunity to point out that this is a mistake. Is this even responsive to the problem of all this garbage that sits around in the Internet forever and ever and is constantly being picked up by browser searches and the like? Your Honor, there's no question that certain policy decisions would have to be made by the Supreme Court of Indiana to put some parameters on this. For example, Professor Volokh says in his article, Well, it could result in you having to do an investigation every time this issue comes up. And so he would limit the statute of limitations to two years. That's not what the NPA appellant's position is. They think it should be able to go on forever. The other issue is, well, how long do they have to investigate before the statute of limitations is triggered? I think he proposes a statute that says 14 days. I mean, clearly it seems to me this is a weighing of benefits and burdens with respect to things that are online, which is obviously very prevalent now. And it more than likely should be a legislative decision as to weighing those burdens and benefits. And I think that's why the professor proposed a statute that could be argued about. But certainly the Indiana Supreme Court, there's been no indication, as Your Honor pointed out, that they would be likely to adopt something like this if it's even a doubt. In fact, the one case which we cited that comes close, we admit it's not on all fours, is the Pack v. Truth Publishing case, which is a court of appeals decision in Indiana, where they said in the context of an anti-SLAPP summary judgment motion by a newspaper in a suit for defamation, they said in that case that if it appeared repeatedly, they did not think that the court would allow such a thing because there was only one publication you should be actionable. And that's really what they were saying, which is very close to the single publication rule. So if there is no remedy under this continuous publication theory, what is a party in NPA's position supposed to do when I assume their ability to raise money is adversely affected by a slew of articles that call them a scam? And how do they remedy that? Your Honor, I would like to say one thing before I address that specific question because you related it to NPA. We did due diligence on some of the facts that they had challenged. First of all, the original article asked them for comment, which they gave. They said it's not a scam. They gave some good examples of where they had benefited a community or two. On the other hand, the only thing that was challenged was whether or not these cities involved were in sanctuary areas or sanctuary cities and whether or not they were 501C3. That doesn't mean that it wasn't still a scam. As a matter of fact, in the lower court, we attached to the motion to dismiss instances where we're still getting scam alerts from different cities. There were six more cities. And counsel says we continue to keep false information on our website. That's just not true. It was true that they are a scam. And we stuck with that position. And the other thing that— Well, can I say your reporting seemed to me to say that there was concern in the cities that they might be a scam. It was quoting various police officers. Are you admitting that you yourselves called them a scam? No. What I was saying was—and you're right. I think the chief of police at Trenton said that. I think there was one other city where Bell Isle was concerned about an elderly population who were receiving these fundraising letters, and he was concerned about taking advantage of them. So the conclusion that they were a scam was based upon sources that we cited in the article and later scam alerts. The other thing is, how often can they come back with this information? For example, if they'd sued us originally regarding the first publication, I think they would have lost. They conceded that there was no actual malice proven in that situation. So then they come back to us later with more information after the two years. They say, well, some of these places were in sanctuary areas or metropolitan areas that had sanctuary schools. So is that enough to withdraw? Could we be sued then if we didn't? They come back three years later, four years later with a new— Retract or remove, I take it. You're not making a big deal about whether it's a retraction or a removal? No. Okay. I think a retraction, as I understand it, would be a recanting of what we said— Yeah, it's one of those little squibs. Sorry, we got this wrong. You know, it's really such and such. It could be. Or a correction. You know, a correction. They're not sanctuary cities, but the officers still call them a scam. And by the way, the officers, at least in two instances that withdrew that, withdrew that characterization after they were sued. And we had an article about that as well. I think the precedent that this court either would set, which I doubt you would do based upon reluctance, understandable reluctance to predict with all these various issues what Indiana would do, and Indiana has given no indication at all that they would adopt a rule like this, particularly 577-2. Here you have a district court in Indiana that did not believe that they would change. You have a decision in 2021 from this court in the Pat Christen-Millibury case, which again talked about a press release that it preceded a settlement agreement, and then people could go online and read the original press release in this court. Basically it was saying that they thought Indiana would not find there would be an actionable lawsuit for something that had been written earlier, and then after the fact information came to the company that had put it on the website. So I think every indication is that the Indiana Supreme Court would adopt a single publication rule. And there's not been one case where the single publication rule has been in effect where this continued publication rule has been in place. And again, at the risk of repeating myself, I think the issue would be it would be a very uncertain statute of limitations because you wouldn't know exactly when it would run. It's an easy statute of limitations right now in Indiana. It's the date of publication. And here I think counsel's arguing in their briefs that it would be the mens rea in terms of when actual malice occurred, which is not as easily determined. So it could be a very loose statute of limitations. It could be just multiple lawsuits that could arise. And more importantly, as it was pointed out in the amicus brief that was signed by 40 different news organizations, the burden of having to investigate every single time this comes in with no temporal limitation, which is what... Well, not just no temporal limitation. I mean the degree... It's very easy to say you've been notified that there was a mistake. And if it's, you know, this was the wrong Tim Eaton or something, then you know. But there are bound to be quite a few situations in which the question whether there was a mistake isn't crystal clear. That's absolutely true. And the longer you go, Your Honor, for example, the reporter may no longer be with the newspaper, may have passed away if it's 40 years later. How can you investigate those type of materials at the risk of being sued again or at the risk of being sued for the first time when your original publication was truthful? And so that's the dilemma. And I see no indication because I think, as this court asked earlier, not one case in this country has adopted it. There's a district court case, again in South Carolina, where the district court determined South Carolina would not follow the single publication rule, and yet there was a subsequent South Carolina state court case that said they would, and they would follow the single publication rule. So he hasn't really pointed to a case on point that he's asking this court to adopt out of whole cloth with all these various elements that would have to be decided. And I think that would not be an appropriate use of the certification because, again, there's no indication here that the law is unsettled. So we respectfully ask that this court affirm the decision of the district court and not certify it to the Indiana Supreme Court. Thank you. All right. Thank you very much. Anything further, Mr. Bauer? Yes, Your Honor. Thank you. The single argument about the single publication rule is just a huge red herring. It applies whether the action accrues on publication, which is a normal case. It applies if the action arises because under subsection 2, the defamer now knows that the statements they are making are false. The question always is under the same- Well, the standard is intentionally and unreasonably. In other words, they have to not remove if they do so intentionally and unreasonably. But do they have to be positive that it was a mistake? Does it seem more likely than not it was a mistake? I mean, think of your own fact situation where there are questions about the organization. And it's certainly true that some people have said negative things about it. But how clear does it need to be? Well, civil cases are preponderance of the evidence. I don't know why they should be. I understand that. So if you think it's more likely than not that you made a mistake, then you have this burden to delete from your website. No, more likely than not than you're making a false statement that defames somebody. And, of course, that it would be. And when you're talking about Internet, there's a balancing under this test. And it's very easy to correct. And the harm is enormous. I mean, it goes on forever, access to millions and billions of people. So that can be readily fixed. And I see my time is up. Thank you very much. Thanks to both counsel. We will take the case under advisement.